# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 06cr1241 DMS |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255** |
| vs. | |
| JAMES MINCOFF, | **[Docket No. 302]** |
| Defendant. | |

This case returns to the Court on Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government has filed a response to the motion, and Defendant has filed a traverse. After reviewing the motion, opposition, traverse, and all supporting documents and the record on file herein, the Court denies the motion.

## I.
## BACKGROUND

On June 6, 2006, Defendant James Mincoff, was indicted for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment also named three other individuals: Juvenal Vega-Soto, Stephen Perry and Jessie Munoz. The indictment was part of a larger investigation of the Mexican Mafia which resulted in five other indictments against numerous other individuals.

Munoz was arrested on June 16, 2006. Mincoff turned himself in and was arrested on July 12, 2006. Between August 4, 2006, and June 29, 2007, the Government produced approximately 48,000

pages of documents and other relevant materials to defendants in each of the related cases. The Government disclosed recordings and transcripts of conversations from wiretaps on phones used by Munoz, including incriminating evidence against Mincoff from several phone calls in late July 2006, and impeachment evidence against Munoz from several phone calls in mid-August 2006.

On June 25, 2007, Munoz pled guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The following day, the Government filed a superseding indictment against Mincoff adding a count for attempted distribution of cocaine and a count for unlawful use of a communication facility in violation of 21 U.S.C. § 843(b).

Mincoff's trial started on August 20, 2007. Munoz testified as the "main government witness" at Mincoff's trial. *United States v. Mincoff*, 574 F.3d 1186, 1190 (9th Cir. 2009). On August 23, 2007, the jury found Mincoff guilty on all counts. The court subsequently sentenced Mincoff to 240 months in prison.

After the jury's verdict but before sentencing, the Government disclosed an additional batch of discovery to defendants pending trial in the related cases. Within that discovery was a report authored on February 21, 2006, by Federal Bureau of Investigation ("FBI") Special Agent Allan Vitkosky detailing his meeting with an unidentified individual "in a position to testify." (Mot. to Vacate, Ex. C.) The individual was most likely Munoz. *(Id.)* The report recorded incriminating evidence the individual provided law enforcement against Thomas Durkin, a defendant in a related case. According to the report, Durkin was charged in state court with possession of two ounces of methamphetamine, and he conspired with Munoz to suborn perjury from Ricky Contreras to undermine the state's case against Durkin. Four sentences of the report bore some relation to the conspiracy to suborn perjury:

> DURKIN also wrote, "RICKY did good . . . did the right thing. I know I'll blow them out of the water in motions." According to the Individual this is a reference to RICKY CONTRERAS, who testified falsely at the Preliminary Hearing (sic) that the methamphetamine belonged to him and not DURKIN. (Intercepted conversations indicated that DURKIN and JESSIE MUNOZ elicited the false / perjured testimony of RICKY CONTRERAS on behalf of DURKIN).

(Mot. to Vacate, Ex. A.) This report and the timing of its production are at the center of the present motion.

///

## II.

## DISCUSSION

Mincoff raises three arguments in support of his Motion to Vacate Conviction and Sentence. First, he alleges the government suppressed Special Agent Vitkosky's FBI report in violation of *Brady v. Maryland.* Second, Mincoff claims the Government's suppression of the FBI report effectively denied him his Sixth Amendment right to confront witness Munoz. Third, Mincoff contends that if the Government did not improperly suppress the FBI report then his trial counsel was ineffective in failing to identify and exploit evidence of Munoz's involvement in a conspiracy to suborn perjury. The Government disputes all arguments.

**A.   *Brady v. Maryland***

Mincoff argues that the Government improperly withheld impeachment evidence: the FBI report discussing witness Munoz's conspiracy to suborn perjury. Due process requires the Government to disclose to the defense any evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Impeachment evidence that can be used to undermine the credibility of a government witness is considered favorable to the accused. *United States v. Bagley*, 473 U.S. 667 (1985). Constitutional error occurs where the Government suppresses evidence favorable to the accused and that evidence was material to the outcome of the trial "such that the defendant was prejudiced by the suppression." *Bailey v. Rae*, 339 F.3d 1107, 1113 (9th Cir. 2003). Evidence that witness Munoz undertook subornation of perjury was favorable to the extent it could have been used to impeach his credibility before the jury.

Here, however, there was no *Brady* violation because the Government disclosed the favorable evidence. *See United States v. Goodwin*, 41 Fed. Appx. 115, 117 (9th Cir. 2002), (citing *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)) ("There is no suppression where the defendant has sufficient information to ascertain the *Brady* information on his own."). All of the relevant information in the FBI report was disclosed to Mincoff in the form of recordings and transcriptions of phone calls that clearly indicated Munoz participated in a conspiracy to suborn perjury and many

1 other crimes. Among the relevant recordings and transcripts was an intercepted call between Durkin
2 and Munoz on August 16, 2005, in which the following exchange took place:

3     [Munoz]:    Well was it on somebody's person? Was somebody
4                                  carrying it?
5     [Durkin]:    Huh?
6     [Munoz]:    Was somebody carrying it or did . . . they find it in the
7                                  car?
8     [Durkin]:    Well I don't know. I don't know. Uh . . . they kind of
9                                . . . I don't know exactly what happened, you know. I
10                               . . . I probably won't know, I, uh . . .
11     [Munoz]:    You know who you can talk to . . . you know, you know
12                                that name, what's his name, Rick?
13     [Durkin]:    Huh?
14     [Munoz]:    Ricky? Ricky?
15     [Durkin]:    What about him?
16     [Munoz]:    You should tell him to suck up and say it was his.

17 (Respondent's Opp'n. to Mot., App. at 20.) The FBI report's only additional mention of the
18 conspiracy to suborn perjury reflects Contreras's actual commission of perjury and suggests no further
19 action by Munoz and no additional grounds for his impeachment.

20         Mincoff cites *Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002), and argues in effect "the state
21 cannot satisfy its *Brady* obligation to disclose exculpatory and impeachment evidence by making some
22 evidence available and asserting that the rest would be cumulative." *Id.* at 1058. However, in *Benn*
23 the Government actually suppressed evidence and that evidence concerned the witness's history of
24 lying as an informant and perjuring himself as a witness. The Ninth Circuit affirmed the district
25 court's holding that the suppressed evidence revealed the witness to be "completely unreliable, a liar
26 for hire, ready to perjure himself for whatever advantage he could squeeze out of the system." *Id.*
27 (citing *Benn v. Wood*, No. C98-513FDB, 2000 U.S. Dist LEXIS 12741, at *13-14 (W.D. Wash. June
28 30, 2000)).

This case is distinguishable from *Benn* on two grounds. First, the Government did not suppress material evidence. *Bagley*, 473 U.S. at 682. ("[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") The exclusion of the FBI report did nothing to affect Munoz's credibility because the same information was contained in discovery. Consequently, there is little possibility - let alone a "reasonable probability" - that disclosing the FBI report would have had any effect on the outcome of Mincoff's trial.

Second, even if Mincoff had impeached Munoz regarding the conspiracy to suborn perjury, it would not have substantially changed the jury's assessment of his credibility. Both the Government and Mincoff provided the jury with sufficient evidence to assess Munoz's motives by discussing his criminal history and the lenient sentence he hoped to receive in exchange for his testimony. The Government's closing argument included this admission:

> Jessie Munoz has pled guilty in this case, and in several others. And I told you he has admitted to doing a lot of bad things. You can, and you should, view his testimony with great scrutiny. He is hoping to get some reduction in sentence maybe, but he also told you he has agreed to an offense level that is as high as the federal sentencing guidelines allow.

(Respondent's Opp'n. to Mot., at 19.) Thus, the jury had an accurate picture of factors motivating Munoz to testify. As discussed, the Government disclosed all favorable information contained in the report in question.[1] Accordingly, there was no *Brady* violation.[2]

**B.    Ineffective Assistance of Counsel**

Mincoff next argues that his trial counsel was ineffective in that he failed to impeach Munoz regarding the above referenced conspiracy. An attorney's representation violates the Sixth Amendment right to counsel if two elements are met. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the attorney's representation must fall below an objective standard of reasonableness. *Id.* at 688.

---

[1] Absent suppression, the court declines to analyze prejudice.

[2] Because the Government did not suppress evidence, there is no basis for Mincoff's claim that the suppression of *Brady* evidence effectively denied him the Sixth Amendment right to confrontation.

1 Here the court "must indulge a strong presumption that counsel's conduct falls within the wide range
2 of reasonable professional assistance." *Id* at 689. Second, there must be prejudice, *i.e.*, a reasonable
3 ///
4 probability that but for counsel's errors, the result of the proceedings would have been different. *Id.*
5 at 694.

6     Here, it is not reasonably probable that impeaching Munoz regarding a conspiracy to suborn perjury would have changed the result of the proceedings. While such an accusation might reasonably cause jurors to question Munoz's credibility and the veracity of his testimony, here, Munoz's credibility was already under attack. Both the Government and Mincoff questioned Munoz about his criminal history and potentially lighter sentence due to his cooperation. Further, an accusation of subornation of perjury would not have materially undermined Munoz's credibility because his testimony regarding Mincoff was corroborated by clearly inculpatory intercepted telephone calls. Therefore, Mincoff was not prejudiced by his attorney's failure to question Munoz regarding the conspiracy to suborn perjury. Absent any prejudice, Mincoff did not receive ineffective assistance of counsel.

### III.
### CONCLUSION

For these reasons, Defendant's motion pursuant to 28 U.S.C. § 2255 is denied.

**IT IS SO ORDERED**.

DATED: July 26, 2011

                                  HON. DANA M. SABRAW
                                  United States District Judge